UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| HORIA DRAGHICIU, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:23-cv-02125-SEB-TAB |
| | ) |
| REID HOSPITAL & HEALTH CARE SERVICES, INC. d/b/a REID HEALTH, REID PHYSICIAN ASSOCIATES, INC., | ) |
| | ) |
| Defendants. | ) |

**ORDER DENYING DEFENDANTS' PARTIAL MOTION TO DISMISS**

Plaintiff Horia Draghiciu, M.D. ("Dr. Draghiciu") filed this lawsuit against his former employers, Defendants Reid Hospital & Health Care Services, Inc. d/b/a Reid Health ("Reid Health") and Reid Physician Associates, Inc. ("RPA") (collectively, "Defendants"), alleging unlawful discrimination on the basis of age, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq.*, as well as breach of contract. Now before the Court are Defendants' Partial Motion to Dismiss, dkt. 27, and Motion to Strike, dkt. 42. For the reasons explained below, Defendants' Motions are **DENIED**.

**LEGAL STANDARD**

To survive a motion to dismiss for failure to state a claim, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim becomes facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

1

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When ruling on a motion to dismiss, courts must construe "all well-pleaded allegations of the complaint as true and view[ ] them in the light most favorable to the plaintiff." *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000). However, courts need not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief. *McCauley v. City of Chicago*, 671 F.3d 611, 616–17 (7th Cir. 2011). The plausibility inquiry is, at bottom, a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012) (internal quotation and citation omitted). In evaluating the legal sufficiency of a complaint, we properly consider exhibits attached thereto or referenced therein as well as information subject to judicial notice. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012); *see also* Fed. R. Civ. P. 10(c).

## BACKGROUND

### I. Factual Background

RPA employs and engages physicians and other health care professionals and staff members on behalf of Reid Health, a regional healthcare provider offering comprehensive inpatient and outpatient services in Eastern Indiana and Western Ohio. Am. Compl. ¶¶ 11–12, dkt. 20. RPA hired Dr. Draghiciu in May 2013 to work for Reid Health as a Pulmonary Critical Care/Intensivist Medicine physician in the Intensive Care Unit ("ICU"). *Id.* ¶ 14.

On November 19, 2020, Dr. Draghiciu and RPA entered into a Professional Services Agreement (the "Agreement") providing for Dr. Draghiciu's continued employment so long as he "successfully obtain[ed] appointment to the Medical Staff" at Reid Health. *Id.* ¶¶ 15,

18. On that same day, Dr. Draghiciu and Defendants also entered into the "PRN Agreement" (the "PRN Agreement"), according to which Dr. Draghiciu agreed to provide Pulmonary Medicine/Sleep Medicine services on behalf of both Defendants.

On October 5, 2022, Dr. Draghiciu attended an in-person meeting with Reid Health's Vice President and Chief Nursing Officer ("CNO"), Misti Foust-Cofield ("Ms. Foust-Cofield"), Dr. Rohit Bawa, and Defendants' Vice President and General Counsel, Pamela Jones ("Ms. Jones"), during which Dr. Draghiciu was warned that he had engaged in improper billing practices, in violation of the Agreement and the PRN Agreement. *Id.* ¶ 22. Thereafter, Dr. Draghiciu received a cease-and-desist letter (on Reid Health letterhead and signed by Ms. Foust-Cofield), which recited details of his alleged misconduct.

In accordance with guidance from Ms. Foust-Cofield as well as what we are told are the usual industry standards, Dr. Draghiciu ceased "signing off on outpatient work until after the completion of his ICU duties . . . ." *Id.* ¶¶ 24–25. On May 31, 2023, notwithstanding his efforts to comply with these requirements, Dr. Draghiciu received a notice of termination set forth on RPA letterhead and signed by "Craig C. Kinyon," the President and CEO of Reid Health.

In August 2023, Dr. Draghiciu, who was at the time sixty-three years old, filed a Charge of Discrimination (the "Charge") with the Equal Opportunity Employment Commission (the "EEOC"), alleging that his employer, Reid Health, had discriminated against him on the basis of age, in violation of the ADEA. According to the Charge, Reid Health's stated reason for terminating Dr. Draghiciu's employment was his breach of the Agreement.

3

Dkt. 29-1 at 2.[1] In his Amended Complaint, Dr. Draghiciu avers that "on August 18, 2023, Vice President and General Counsel of [RPA] and Reid [Health], Pamela Jones, was informed of the . . . [C]harge, and she confirmed receipt of the filed stamped EEOC [C]harge on September 7, 2023." Am. Compl. ¶ 8, dkt. 20.

## II.   Procedural Background

On November 27, 2023, Dr. Draghiciu filed this action against Reid Health and RPA alleging age discrimination and breach of contract. On February 23, 2024, Dr. Draghiciu filed what has become the operative complaint. Dkt. 20. On April 11, 2024, Defendants moved for partial motion to dismiss, seeking dismissal of Dr. Draghiciu's ADEA claim against RPA and dismissal of the breach-of-contract claim against Reid Health. On May 20, 2024, the parties stipulated to the dismissal with prejudice of Dr. Draghiciu's breach-of-contract claim against Reid Health, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii). Dkt. 38, 41. On May 30, 2024, Defendants moved to strike from the record a certain exhibit submitted by Dr. Draghiciu in his responsive brief. Dkt. 42. Both motions are fully briefed and ripe for ruling.[2]

## DISCUSSION

Below, we turn first to Defendants' motion to strike before addressing their argument concerning the dismissal of Dr. Draghiciu's ADEA claim against RPA.

---

[1] We properly consider the Charge as part of the pleadings, as the Charge is "referred to in [Dr. Draghiciu's] complaint and [is] central to his claim . . . ." *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998) (emphasis omitted) (internal quotation and citation omitted).
[2] We recognize that, on January 14, 2025, Defendants moved for summary judgment on all claims. That motion is unaffected by today's ruling and will be resolved in due course.

I.  **Motion to Strike**

In response to Defendants' Motion to Dismiss, Dr. Draghiciu submitted a November 20, 2023, letter from Defendants' prior counsel directed to the EEOC, wherein RPA is identified both as the respondent and as Dr. Draghiciu's employer. Dkt. 36-1. RPA's counsel also requested an extension of time to file a position statement on RPA's behalf. *Id.* Defendants have moved to strike this letter, arguing that it constitutes an improper attempt by Dr. Draghiciu to amend his pleadings through a responsive brief.

It is well established that a party opposing a Rule 12 motion may submit materials outside the pleadings "to illustrate for the court the facts the party hopes to prove to support the allegations in the complaint." *Roe v. Bridgestone Corp.*, 492 F. Supp. 2d 988, 1007 (S.D. Ind. 2007) (citing *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 704 (7th Cir. 2004)). "Such documents are not evidence, but they provide a way for a plaintiff to show a court that there is likely to be some evidentiary weight behind the pleadings the court must evaluate." *Id.*; *see also Help At Home, Inc. v. Med. Cap., L.L.C.*, 260 F.3d 748, 752–53 (7th Cir. 2001) (stating that a plaintiff may add facts not pleaded in the complaint "by affidavit or brief in order to defeat a motion to dismiss if the facts are consistent with the allegations of the complaint"). Because the November 20, 2023, letter furthers Dr. Draghiciu's averments regarding the exhaustion of his administrative remedies, we may properly consider it. *See Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015). Defendants' motion to strike is therefore **DENIED**.

## II.   Exhaustion of Administrative Remedies

RPA argues that Dr. Draghiciu failed to exhaust his administrative remedies with respect to his ADEA claim because Dr. Draghiciu named only Reid Health in his Charge. Dr. Draghiciu does not dispute that he named Reid Health, rather than RPA, in his Charge; however, he contends that the allegations in his Charge were nevertheless sufficient to put RPA "on adequate notice" of the proceedings. Dkt. 37 at 4.

"The ADEA . . . sets up a remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process." *Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) (internal quotation omitted). Accordingly, the Seventh Circuit has "often explained that 'it is particularly inappropriate to undermine the effectiveness of [the ADEA] by dismissing claims merely because the victim of the alleged discrimination failed to comply with the intricate technicalities of the statute.' " *Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 399 (7th Cir. 2019) (quoting *Husch v. Szabo Food Service Co.*, 851 F.2d 999, 1002 (7th Cir. 1988)). Where, as here, "an employer argues that a suit should be dismissed for failure to exhaust administrative remedies properly, we must keep these general principles in mind." *Id.* at 400.

Before bringing an action in federal court, "[a]n ADEA claimant must first file a charge of discrimination with the EEOC and then wait sixty days . . . ." *Id.* Under EEOC regulations, an ADEA "charge" is a " 'statement filed with the Commission' alleging that 'the named prospective defendant' has violated the ADEA. *Id.* (quoting 29 C.F.R. § 1626.3). "Upon receiving a charge, the EEOC is supposed to serve notice 'on persons named in such charge as prospective defendants' and to 'seek to eliminate any alleged unlawful practice

6

by informal methods of conciliation, conference, and persuasion.' " *Id.* (quoting 29 C.F.R. § 626(d)(2)).

Generally, "a party not named in the EEOC charge is not subject to suit." *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013). However, an employment discrimination claim need not be dismissed "where the 'unnamed party has been provided with adequate notice of the charge, under circumstances where the party has been given the opportunity to participate in conciliation proceedings aimed at voluntary compliance.' " *Id.* (quoting *Eggleston v. Chicago Journeymen Plumbers' Loc. Union No. 130, U.A.*, 657 F.2d 890, 905 (7th Cir. 1981)); *see also Trujillo*, 926 F.3d at 400 (explaining that a "minor error in stating the name of the employer" in a charge of discrimination is not a basis for dismissal).

Applying these principles to the case at bar, we disagree with RPA that the omission of its name from the Charge merits dismissal of Dr. Draghiciu's ADEA claim against it. As Dr. Draghiciu alleges in the Amended Complaint, RPA and Reid Health's Vice President and General Counsel, Ms. Jones, confirmed receipt of the Charge on September 7, 2023. Am. Compl. ¶ 8, dkt. 20. Although the Charge names "Reid Health" as the respondent, the Charge asserts that Dr. Draghiciu's employment was governed by the terms of the Agreement to which he and RPA (but *not* Reid Health) were parties. Ms. Jones's receipt of the Charge, coupled with the allegations contained therein, supports an inference that RPA was on notice of the allegations against it. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1089 (7th Cir. 2008). Insofar as RPA maintains otherwise, Dr. Draghiciu's submission of the November 20, 2023, letter from Defendants' counsel to the EEOC suggests that there might well

be "some evidentiary weight behind" his contentions that RPA not only knew about the Charge but also had the opportunity to participate in the administrative proceedings. *Roe*, 492 F. Supp. 2d at 1007.

Both Defendants (allegedly) refer to themselves as "Reid Health when conducting business," dkt. 37 at 4, and the Indiana Secretary of State records show that both Defendants share the same business addresses, dkt. 29-2.[3] The Seventh Circuit has cautioned against penalizing claimants for "the human tendency to use the informal names [often] use[d] in common parlance" and has forewarned the potential "legal challenges that can arise in identifying the legally correct employer in complex business arrangements, such as those involving . . . outsourcing of human resources and payroll functions . . . ." *Trujillo*, 926 F.3d at 401. In accordance with these legal principles, we hold that dismissal of Dr. Draghiciu's ADEA claim against RPA is not appropriate on the grounds asserted, and Defendants' motion is **DENIED** accordingly.

## CONCLUSION

For these reasons, Defendants Motion to Dismiss, dkt. 27, and Motion to Strike, dkt. 42, are **DENIED.**

IT IS SO ORDERED.

Date: 3/12/2025

*[signature: Sarah Evans Barker]*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

---

[3] We properly take judicial notice of matters of public record, such as the records from the Indiana Secretary of State's Office. *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997).

Distribution:

Timothy A. Dowers
John H. Haskin & Associates
tdowers@jhaskinlaw.com

John H. Haskin
JOHN H. HASKIN & ASSOCIATES, LLC
jhaskin@jhaskinlaw.com

Dana Eugene Stutzman
Hall, Render, Killian, Heath & Lyman, P.C.
dstutzman@hallrender.com